# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SILVER STATE BROADCASTING, LLC,  )
                                               )
              Plaintiff,             )     Case No.: 2:18-cv-00734-GMN-VCF
     vs.                             )
                                               )             **ORDER**
CROWN CASTLE MU, LLC, *et al.*,      )
                                               )
              Defendants.       )
                                               )

Pending before the Court is the Motion to Dismiss, (ECF No. 6),[1] filed by Defendants Crown Castle MU, LLC ("Crown Castle"), Luke Christen ("Christen"), and Walter Eichelberger ("Eichelberger") (collectively "Defendants"), to which Defendant Broken Arrow Communications, Inc. ("BAC") filed a Joinder, (ECF No. 11). Plaintiff Silver State Broadcasting, LLC ("Plaintiff") filed a Response, (ECF No. 19), and Defendants filed a Reply, (ECF No. 21); (*see also* BAC's Joinder to Reply, ECF No. 23).[2]

Also pending before the Court is the Motion to Remand, (ECF No. 8), filed by Plaintiff. Defendants filed a Response, (ECF No. 13); (*see also* BAC's Joinder to Resp., ECF No. 18), and Plaintiff did not file a reply.

For the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Motion to Remand is **DENIED**.

---

[1] The Motion expressly requests summary judgment as an alternative to dismissal. (Def.'s Mot. to Dismiss 2:1–5, ECF No. 6). The Court denies that portion of the Motion without prejudice as it is premature. *See, e.g.*, *Tousa Homes Inc. v. Phillips*, 363 F. Supp. 2d 1274, 1283–84 (D. Nev. 2005).

[2] On the same day that Defendants filed the Motion to Dismiss, (ECF No. 6), Plaintiff timely filed an Amended Complaint, (ECF No. 7). To address the new allegations, Crown Castle filed a Supplemental Motion to Dismiss, (ECF No. 15), which preceded Plaintiff's Response, (ECF No. 19).

## I. BACKGROUND

This case arises out of an alleged breach of contract resulting in physical damage to Plaintiff's radiobroadcasting equipment and interruptions to Plaintiff's radio station signal. (*See generally* Am. Compl., ECF No. 7). Pursuant to a contract (the "Licensing Agreement") between Plaintiff and Crown Castle, Plaintiff is authorized to use a radio tower (the "Tower") on Mount Potosi to operate a radio station. (*Id.* ¶¶ 10–11). At all relevant times Crown Castle, as licensor under the Licensing Agreement, controlled access to the Tower and adjacent broadcasting facility and employed contractors to perform work at and around the Tower. (*Id.* ¶ 12).

Plaintiff alleges that Crown Castle's intentional and reckless conduct caused damage to Plaintiff's equipment attached to the Tower, precluding it from conducting its radiobroadcasting business. (*Id.* ¶ 10). Specifically, one of Crown Castle's contractors, BAC, allegedly removed latches to feedlines attached to the Tower which resulted in damage to Plaintiff's feedlines and antenna. (*Id.* ¶ 19). Since January 2017, Plaintiff alleges that the Tower and its attached improvements have been in disrepair. (*Id.* ¶ 14).

According to the Complaint, Crown Castle actively concealed the identity of BAC and refused to permit Plaintiff to contact BAC to inquire about its work at the Tower. (*Id.* ¶ 13). Crown Castle has also allegedly misrepresented to Plaintiff that the Tower and its attached improvements are functional. (*Id.* ¶ 15). Plaintiff further alleges that Christen and Eichelberger, agents of Crown Castle, worked at Crown Castle's direction to misrepresent the status of the Tower's repairs, withhold the identity of BAC to Plaintiff, and inform Plaintiff that it was prohibited from contacting BAC. (*Id.* ¶¶ 16–17). But for Crown Castle and its agents' refusal to disclose BAC's identity, Plaintiff alleges it would have been able to mitigate the damages incurred. (*Id.* ¶ 16).

Plaintiff filed the instant action in state court on March 28, 2018, and Defendants subsequently removed the case here. (*See* Pet. for Removal, ECF No. 1). Plaintiff's Amended Complaint (the "Complaint") states eight causes of action for: (1) breach of contract; (2) reckless conduct and gross negligence; (3) intentional damage to property; (4) negligent interference with contractual relations; (5) intentional interference with contractual relations; (6) breach of the contractual covenant of good faith and fair dealing; (7) tortious breach of the covenant of good faith and fair dealing; and (8) declaratory relief. (*See* Am. Compl. ¶¶ 19–58, ECF No. 7).

## II. **MOTION TO REMAND**

Plaintiff moves to remand this action on the basis that Plaintiff and Defendant Christen's shared Nevada citizenship deprives the Court of subject matter jurisdiction. (Mot. to Remand 3:21–23, ECF No. 8). Defendants respond that under the doctrine of fraudulent joinder, the Court may disregard Christen's citizenship for jurisdictional purposes. (Resp. to Mot. to Remand 3:15–4:22, ECF No. 13). Defendants assert that fraudulent joinder applies because Plaintiff fails to allege valid causes of action against Christen and this suggests, according to Defendants, that Plaintiff's inclusion of Christen in this suit is solely to preclude federal diversity jurisdiction. (*Id.* 2:14–15, 3:15–7:20).

### A. Legal Standard

District courts have subject matter jurisdiction over: (1) civil actions arising under federal law, and (2) civil actions where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). A defendant may remove an action to federal court only if the district court has subject matter jurisdiction over the matter. 28 U.S.C. § 1441(a). "Removal statutes are to be 'strictly construed' against removal jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). The party asserting federal

jurisdiction bears the burden of overcoming the presumption against federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Discussion

From the face of the Complaint, it is clear that the Court is without subject matter jurisdiction. Federal question jurisdiction is not at issue as all claims arise under state law. (*See* Am. Compl. ¶¶ 19–58, ECF No.7). Diversity jurisdiction is not satisfied because Plaintiff and Christen are Nevada citizens. (*Id.* ¶¶ 1, 4). Notwithstanding the Court's lack of subject matter jurisdiction, Defendants raise the doctrine of fraudulent joinder to support this Court's retention of the case.

#### 1. Fraudulent Joinder

"Fraudulent joinder is a term of art." *McCabe v. Gen. Foods. Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Joinder is fraudulent, for the purposes of determining subject matter jurisdiction, if "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* (citing Moore's Federal Practice (1986) ¶ O.161[2])). Where joinder of a non-diverse defendant is deemed fraudulent, "the defendant's presence in the lawsuit is ignored for purposes of determining diversity." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

According to Plaintiff, Christen was "a key figure in the harm and damages suffered" and "is named because of his role in concealing the identify of, denying and controlling access to" BAC. (Mot. to Remand 4:14–16, ECF No. 8). Christen is agent of Crown Castle's and allegedly acted at its direction in misrepresenting the status of the Towers' repairs to Plaintiff. (Am. Compl. *Id.* ¶ 16, ECF No. 7). Plaintiff on occasion asked Christen for BAC's identity, to which Christen refused and allegedly responded that Plaintiff was "prohibited from contacting Crown Castle's subcontractor." (*Id.* ¶ 16). Based upon these allegations, Plaintiff brings claims for breach of contract and reckless conduct and gross negligence against Christen. As

discussed below, Plaintiff's allegations in support of these claims are sufficiently defective as to warrant application of the fraudulent joinder doctrine.

Beginning with breach of contract, Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1141 (D. Nev. 2014). Here, Plaintiff's claim necessarily fails because Plaintiff does not allege that Christen was a party to the Licensing Agreement— the only contract mentioned in the Complaint. Consequently, Plaintiff cannot plausibly establish any elements of a breach of contract claim. Indeed, Plaintiff does not contest this point and declines to put forth an opposition. (*See* Pl.'s Resp. to MTD 5:12–14, 6:18–9:2, ECF No. 19).

Next the Court turns to Plaintiff's tort claim labeled reckless conduct and gross negligence. (Am. Compl. ¶¶ 24–32). "A claim for gross negligence is separate from a normal negligence claim." *Gaming v. Trustwave Holdings, Inc.*, No. 2:15-cv-02464-GMN-PAL, 2016 WL 5799300, at *6 (D. Nev. Sept. 30, 2016). "[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). "However, to state a claim for gross negligence a plaintiff must establish that the defendant failed "to exercise even the slightest degree of care" in his conduct." *Gaming*, 2016 WL 5799300, at *6 (quoting *Hart v. Kline*, 116 P.2d 672, 673–74 (Nev. 1941)).

Plaintiff's theory of tort liability centers upon Christen's alleged breach of his duty to disclose BAC's identity to Plaintiff. (Pl.'s Resp. to MTD 6:18–7:7). In support, Plaintiff cites to authority establishing that a party may be liable for failing to disclose material facts when those facts are not accessible to an opposing party. (*Id.* 7:8–8:9). A duty to disclose material facts may be triggered in circumstances where there is a special relationship between the

parties. *Mackintosh v. Jack Matthews & Co.*, 855 P.2d 549, 553–54 (Nev. 1993); *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1416–18 (D. Nev. 1995). A "duty to disclose may arise 'in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence.'" *Couturier v. Am. Invsco Corp.*, 10 F. Supp. 1143, 1156 (D. Nev. 2014) (quoting *Mackintosh*, 855 P.2d at 553). For example, "[t]he Nevada Supreme Court has recognized such a 'special relationship' between real estate agents/buyers, insurers/insureds, trustees/beneficiaries, and attorneys/clients," such that nondisclosure becomes "the equivalent of fraudulent concealment." *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F. Supp. 2d 1279, 1292 (D. Nev. 2013) (quoting *Nevada Power Co.*, 891 F. Supp. at 1416 n.3). On the other hand, a "straightforward vendor-vendee relationship," or an association characterized by "routine, arms-length dealings" will not suffice to establish a special relationship. *Nevada Power Co.*, 891 F. Supp. at 1417; *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1288 (D. Nev. 2010).

Here, Plaintiff's allegations concerning the association between Plaintiff and Christen do not meet any of the hallmarks of a special relationship. The allegations illustrating the relationship are limited to Christen, in his capacity as Crowns Castle's agent, preventing Plaintiff from learning BAC's identity. The Complaint contains no other factual assertions shedding light on their relationship such as any previous communications, duration of the relationship, or any prior course of dealing. Without more, the Court cannot plausibly infer that Christen imposed confidence in Plaintiff such that Plaintiff justifiably placed more credence in his representations than that of any other person with whom Plaintiff exchanged communications. *Mackintosh*, 855 P.2d at 554.

Based upon the foregoing, the Court finds that Plaintiff fails to state viable causes of action against Christen. Because Plaintiff's allegations omit essential elements of the claims against Christen, the Court finds these deficiencies are obvious under settled Nevada law.

1 Accordingly, the doctrine of fraudulent joinder applies and the Court will ignore Christen's citizenship for the purposes of diversity jurisdiction. Plaintiff's Motion to Remand is denied.

## III. MOTION TO DISMISS

### A. Legal Standard

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282

(9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. Discussion**

Preliminarily, because the Court concluded *supra* that Plaintiff's Complaint fails to state cognizable claims against Christen, the Court grants Defendant's Motion to Dismiss with respect to those claims. Because Plaintiff alleges identical facts against Eichelberger—the only other individual Defendant named—the Court grants Defendant's Motion as to the claims for breach of contract and gross negligence and reckless conduct against him as well. (*See* Am. Compl. ¶¶ 16–17, 21, 26, 29). Additionally, the Court dismisses Plaintiff's claims against BAC in light of Plaintiff's failure to address any cause of action against BAC in its Response. (*See generally*, Pl.'s Resp. to MTD). The Court now turns to the merits of Plaintiff's claims against Crown Castle.

**1. Breach of Contract**

Crown Castle moves to dismiss Plaintiff's breach of contract claim on the following grounds: (1) Plaintiff fails to allege any specific act or omission by Crown Castle; (2) Plaintiff's allegations regarding damage to its broadcasting equipment exclusively assign fault to BAC;

and (3) the Licensing Agreement provides that Crown Castle is not liable for acts of third parties. (Def.'s Mot. to Dismiss ("MTD") 11:8–11, ECF No. 6).

In Nevada, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (1987). To establish breach of contract, a plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1141 (D. Nev. 2014).

Crown Castle avers, *inter alia*, that the Licensing Agreement states that Crown Castle "shall in no way be liable for loss of use or other damage of any nature arising out of the loss, destruction or damage to the Licensed Premises or to Licensee's Equipment located thereon, by . . . acts of third parties." (MTD 11:10–11); (*see also* Licensing Agreement ¶ 12, Ex. 1 to MTD, ECF No. 6-1). Crown Castle continues that given BAC is a third party, and because Plaintiff's allegations state that BAC, rather than Crown Castle, damaged the broadcasting equipment, the Licensing Agreement's express terms foreclose liability. (MTD 3:8, 6:2–4).

Neither Plaintiff's Complaint, nor its Response, identify any provision of the Licensing Agreement that Crown Castle allegedly breached. Nor does Plaintiff respond to Crown Castle's contention that the terms of the Licensing Agreement shield Crown Castle from liability for the damage allegedly caused by BAC. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's breach of contract claim.

**2. Breach of the Contractual Covenant of Good Faith and Fair Dealing**

Breach of the covenant of good faith and fair dealing requires a showing that: (1) plaintiff and defendant were parties to an agreement; (2) defendant owed a duty of good faith to the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (per curiam). In Nevada, an implied covenant of good

faith and fair dealing exists in every commercial contract, *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev.1998) (per curiam), and a plaintiff may assert a claim for its breach "[w]here the terms of a contract are literally complied with but one party to the contract deliberately [contravenes] the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–923 (Nev. 1991).

Plaintiff's allegations provide that Crown Castle "failed to deal with [Plaintiff] in good faith and failed to treat [Plaintiff] fairly" by "refusing to identify its agent in the maintenance and repair of the Tower and the adjacent facilities." (Am. Compl. ¶ 46). According to Plaintiff, Crown Castle's refusal to provide BAC's name breached the duty of "good faith and fair dealing inherent in the License." (*Id.* ¶ 47). These allegations are insufficient to establish that Crown Castle's conduct contravened the Licensing Agreement's purpose. Indeed, Plaintiff does not allege anything about the "intention and spirit" of the Licensing Agreement that would justify Plaintiff's expectation that Crown Castle would communicate contact information of its subcontractors at Plaintiff's request. Therefore, the Court grants Defendants' Motion to Dismiss the claim for breach of the implied covenant of good faith and fair dealing.

### 3. Breach of Bailment

Plaintiff suggests that Crown Castle may be liable for breaching duties attendant to those of a bailor in the context of a bailment. (Pl.'s Resp. to MTD 10:21–11:13). Plaintiff contends that Crown Castle was under a duty to release Plaintiff's property when so demanded and breached this duty by refusing to give Plaintiff "access to the Tower and to [Crown Castle's] contractors." (*Id.* 11:6–9). Crown Castle argues that this argument fails because Crown Castle never took possession of Plaintiff's property and, thus, there was neither an express nor an implied bailment. (Reply 8:25–9:21, ECF No. 21).

"A bailment relationship arises by the 'delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or

implied-in-fact contract.'" *GCM Air Grp., LLC v. Chevron U.S.A., Inc.*, No. 3:07-cv-00168-BES-RAM, 2009 WL 10696479, at *6 (D. Nev. June 18, 2009), *aff'd in part, rev'd in part*, 386 F. App'x 717 (9th Cir. 2010) (quoting Black's Law Dictionary 136 (7th ed. 1999)). "Where a bailee, either for hire or gratuitously, is entrusted with care and custody of goods, it becomes his duty at the end of the bailment to return the goods or show that their loss occurred without negligence on his part." *Kula v. Karat, Inc.*, 531 P.2d 1353, 1355 (1975). "Failing in this, there arises a presumption that the goods have been converted by him, or lost as a result of his negligence, and he is accountable to the owner for them." *Id.*

Plaintiff's bailment theory cannot withstand Defendants' Motion to Dismiss because there is no allegation that Crown Castle took lawful possession of Plaintiff's property. Indeed, the cases cited by Plaintiff are readily distinguishable as they involve explicit agreements for the temporary transfer of personal property between parties. *See, e.g.*, *Martin, Lucas & Chioffi, LLP v. Bank of Am., N.A.*, 714 F. Supp. 2d 303, 310 (D. Conn. 2010) (holding a bailment was created when the defendant bank "agreed to store the law firm file cabinets in its vault for a monthly fee"); *Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1175 (D. N.J. 1994), *aff'd*, 96 F.3d 1434 (3d Cir. 1996) (concluding a bailment relationship was triggered by an agreement under which one party temporarily loaned manufacturing equipment to another party); *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 117 (E.D.N.Y. 2005) (examining whether a bailment was created by plaintiff loaning jewelry to defendant); *Mills v. Cont'l Parking Corp.*, 475 P.2d 673, 674 (1970) ("[W]here the parking lot attendant collects a fee, has possession of the keys, assumes control of the car and issues a ticket to identify the car for redelivery, the legal relationship of bailor-bailee is created.").

Unlike these cases, Plaintiff does not allege, or argue in its Response, that it delivered personal property to Crown Castle. As to Crown Castle's alleged failure to provide "access to the Tower and to the contractors," Plaintiff fails to elaborate on how this constitutes a bailment.

(Pl.'s Resp. to MTD 11:7–11). Neither the Tower nor the contractors may be said to be Plaintiff's personal property or that Plaintiff conceivably transferred possession of them to Crown Castle.

### 4. Tort-Based Theories of Liability

Next the Court turns to Plaintiff's causes of action for gross negligence and reckless conduct and tortious interference with contractual relations. Crown Castle moves to dismiss these claims on the basis that they are barred by the economic loss doctrine. (MTD 12:7–14). Plaintiff does not dispute that the economic loss doctrine generally bars these claims but contends that an exception applies to intentional torts and where the parties enjoy a special relationship. (Pl.'s Resp. to MTD 5:12–14, 10:3–6).

#### a. Economic Loss Doctrine

As a general matter, the economic loss doctrine bars actions in tort where an allegedly breached duty arises from failure to perform contractual obligations. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (collecting Nevada Supreme Court cases). The doctrine does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff. *Id.*

Here, Plaintiff's claim for gross negligence and reckless conduct is barred by the economic loss doctrine. Plaintiff expressly asserts that Crown Castle's "familiarity with the Licensing Agreement" created "a special relationship imposing a duty beyond the low bar of reasonable care." (Pl.'s Resp. to MTD 10:7–14). In light of Plaintiff's acknowledgement that the Licensing Agreement is the source of Crown Castle's alleged heightened duty, the economic loss doctrine applies and precludes this claim. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004); *see also Giles*, 494 F.3d at 876 (noting that tort claims amounting to "nothing

more than a failure to perform a promise contained in a contract," are barred by the economic loss doctrine).

As to Plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing, "[t]he economic loss doctrine does not bar intentional tort claims." *Bank of Am. v. Bailey*, No. 2:14-cv-885-JCM-GWF, 2016 WL 3410174, at *5 (D. Nev. June 15, 2016) (citing *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (2009)); *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 651 P.2d 637, 638 (1982). Therefore, to the extent this claim is grounded in intentional conduct, the economic loss doctrine does not bar recovery.

### b. Tortious Breach of the Covenant of Good Faith and Fair Dealing

"[A]n action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor." *See Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 702 (2006). "A special relationship is 'characterized by elements of public interest, adhesion, and fiduciary responsibility.'" *Id.* (citation omitted). The Nevada Supreme Court has held that special relationships arise in situations involving an "element of reliance" and those in which one party holds "vastly superior bargaining power." *Id.* (citations omitted).

With respect to Plaintiff's argument that Crown Castle and Plaintiff enjoyed a "special relationship," Plaintiff cites no authority for the proposition that such a relationship is established, as a matter of law, by virtue of the parties' licensor-licensee relationship. *Cf. Nevada Power Co.*, 891 F. Supp. at 1417 (holding a "straightforward vendor-vendee relationship . . . as a matter of law, creates no fraud-based duty to disclose"). Nor are there any allegations that would place the relationship between Plaintiff and Crown Castle on par with the types of transactions the Nevada Supreme Court has recognized may give rise to a special relationship. *See Peri & Sons Farms*, 933 F. Supp. 2d at 1292 (noting that the Nevada Supreme

Court has recognized special relationships "between real estate agents/buyers, insurers/insureds, trustees/beneficiaries, and attorneys/clients"). In the absence of facts showing that Plaintiff's association with Defendants was elevated beyond that of a standard licensor-licensee relationship, Plaintiff cannot establish that Crown Castle was under a duty to disclose.

### 5. Plaintiff's Claims for Intentional Damage to Property, Negligent Interference with Contractual Relations, Intentional Interference with Contractual Relations, and Declaratory Relief

Crown Castle moves for dismissal of Plaintiff's claims for intentional damage to property, negligent and intentional interference with contractual relations, and declaratory relief on the basis that Plaintiff has abandoned these four causes of action by failing to advance any opposition. (Reply 4:12–16).

As a general rule "[b]y failing to address arguments in an opposition, a party effectively concedes a claim, making dismissal proper." *Griffin v. City of Lake Elsinore*, No. 2:17-cv-00730-KJD-VCF, 2017 WL 2817884, at *2 (D. Nev. June 28, 2017) (citing *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)); *see also* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").

Here, in light of Plaintiff's failure to oppose Defendants' Motion, the Court dismisses Plaintiff's claims for intentional damage to property, negligent interference with contractual relations, and intentional interference with contractual relations without prejudice. With respect to Plaintiff's claim for declaratory relief, it is well established that declaratory relief is a remedy rather than a stand-alone cause of action. *See, e.g.*, *U.S. BANK, N.A. v. 9008 Med. Wheel Tr.*, No. 2:18-cv-00092-GMN-NJK, 2018 WL 4494090, at *3 (D. Nev. Sept. 18, 2018); *Brannan v. Bank of Am.*, No. 2:16-cv-01004-GMN-GWF, 2018 WL 1220562, at *6 (D. Nev.

Mar. 8, 2018). Because the Court dismisses Plaintiff's substantive causes of action in this Order, Plaintiff is not entitled to any remedy at this stage, including that of declaratory relief. Accordingly, the Court dismisses this claim without prejudice.

## IV.   **LEAVE TO AMEND**

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Here, the Court finds that Plaintiff may be able to plausibly establish the claims dismissed in this Order. The Court notes, however, that despite filing an Amended Complaint, Plaintiff has thus far failed to adequately plead any cause of action. The Court will, therefore, permit Plaintiff to file a second amended complaint only if Plaintiff can allege more factual material from which the Court can plausibly infer that Defendants acted unlawfully. Should Plaintiff elect to file a second amended complaint, it must be filed within twenty-one (21) days of this Order. Failure to do so will result in the Court dismissing the case with prejudice.

///
///
///
///
///
///
///
///

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 6), and BAC's Joinder, (ECF No. 11), are **GRANTED**. Plaintiff's causes of action against Defendants Crown Castle, BAC, Christen, and Eichelberger are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's second amended complaint, if Plaintiff chooses to file one, is due within twenty-one (21) days of this Order. Failure to file an amended complaint by this deadline will result in Plaintiff's case being dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand, (ECF No. 8), is **DENIED**.

**DATED** this __17__ day of December, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge